Good morning, Your Honors. Marta VanLandingham appearing on behalf of Appellant David Patton. I'd like to reserve two minutes for rebuttal. I'd like to start briefly with the abuse of discretion claim. I want to make clear that we're not saying that every time a magistrate or a district court denies an appellant who's proceeding pro per the appointment of counsel that that's abuse of discretion. What we're saying is in a case like this one where there is a strong and documented evidence of mental illness that goes both to the merits of the claim of ineffective assistance for lack of a mental state defense and to the defendant's petitioner's ability to present that claim, that's a different situation. And the abuse comes clear in this case where you have the court below engaging in contradictory standards of analysis. When it's a case of looking at the merits of the mental illness claim, then everything is unintelligible. And the petitioner has not made clear what the basis for relief is or what the sought-after relief is and so on. But whenever the petitioner requests appointment of counsel, it's a completely different story. All of a sudden, it's completely intelligible, and there is no basis for thinking he cannot bring his own claims. And the court said the first petition was unintelligible, and your client filed another one? Filed actually three in total. And the court said that the mental illness claim wasn't developed, but it didn't say the petition, the operative petition, was unintelligible, right? No, there were often, I could quote throughout the various orders and denials, the words unintelligible comes through often, and rambling and meandering and so on. I mean, I could certainly go through the record if you'd like, Your Honor. It's still the case, though, that it's hard to reverse a denial of counsel under the abuse of discretion standard. I'm not sure I could find any case that would have done that in anything like this context. Do you agree? The standard under 3006 has to do with, what's the phrasing, basically an interest of justice. And there is a case that talks about the interest of justice in the circuit being basically it's due process. And here we're arguing in this case there is a denial of due process because there is no opportunity under what happened below for the petitioner to be heard to make his case and have it be accepted and evaluated. Could I ask on that front? That is my understanding of the standard, and it's a pretty high one to me. Yes. I guess let me just put my cards on the table and tell you what bothers me about your position. I think we now know what is available to the petitioner, and we know what the state's response is. And it seems to me that the main problem is one of exhaustion. So, you know, you've done a fabulous job, it seems to me, kind of resurrecting viable claims from what's there. But then the state comes back and says, well, those weren't the claims that he tried to litigate in state court, and he's now precluded from doing so in federal court. So I guess where I got stuck was, well, yeah, we could send it back since he's a lawyer, but we kind of know how this is going to play out. Is that not we can't take that into account, or obviously you disagree, but you know what I'm saying? Well, that is exactly where I wanted to go next, actually, Your Honor, on the understanding that this court could send the claim back on remand just on the ineffective assistance or failure to investigate and present a mental defense. And I do want to go over in a very, very focused and clear way how it was exhausted. So the first petition was filed by the petitioner in the California Court of Appeal in February 24th, 2015. And that entire petition is provided to this court, part of it in our excerpts of record, but also in the supplemental excerpts of record from 1024 to 1123. That same petition was also presented in a petition for review to the California Supreme Court, which denied it. So the question that I want to get to is what was in that petition to show that this claim was exhausted. In that petition, ground two was called Counsel's Failure to Investigate Evidence and Use Defendant's Mental Illness. But, Counsel, at the exact same time that that was being filed, your client was telling the California Supreme Court that the doctor who said he was crazy was crazy and that he and his lawyer agreed that that doctor was nuts and that his defense was he didn't do it, not that he did it and was insane. Have I got any of that wrong? You're referring to the annotations in Exhibit C, but that was the one presented in the federal court in the second amendment petition. That was not at all in the petitions before the state court. It was before the state court. When he said the mental illness part, his argument to the state court was essentially he didn't do it right. He made a lot of arguments. He made a lot of claims. Is there anything before the state court other than the part about he never mentioned insanity. He talked about a couple of incidents in his past, right? Yes. Actually, there is. There are three claims in that first petition before that. The state court petition? Yes. Okay. And I can give you the exact citations. The first one that I mentioned, Ground 2, Failure to Investigate Evidence of Mental Illness. That's on SER 1030. And he gives the factual basis. He says Exhibit C. Where's Exhibit C? Exhibit C is SER 1030. Oh, no, no. That's right. Exhibit C is SER 1082 to 1113 and also ER 141 to 71. And that is Dr. Hirsch's report. Okay. It's just the report. Yeah. Exhibit C in its entirety is just that report. Right. I see. And the annotation was only in the federal case, not in the state case. Correct. And he also provides legal citations to Harris v. Bell and Antoine v. Della. Ground 3 of that same petition is Failure to Develop Mental Health Defense, SER 1031. And here he cites to Douglas v. Woodford. And then there's Exhibit C, which not only discusses the depth and length and extensiveness of the record of mental illness, but also explains to the reader that Mr. Patton is in denial of his mental illness. Sorry, can I just ask this? Exhibit C, I wasn't sure it had gone to the California Supreme Court. It looked like it had gone to the California Court of Appeal, but it sounds like you're saying it went to the California Supreme Court, and I'm not getting all that. Can you explain what you're saying? Correct. It went to the petition for review. The docket entry from the California Supreme Court on that case is included in the SER, and it shows that they brought the entire record from the CCA to review for the petition for review. And is that adequate for presenting it? I mean, it seemed to me that the wording was a little bit different in what he said to the California Supreme Court compared to the California Court of Appeal, and also that I hadn't thought this exhibit was as prominent, at least. The entire CCA went to the California Supreme Court on petition for review, exactly as I just described it, and then he filed a second California Supreme – well, it was the first direct California Supreme Court petition that was on in 2016. And under California law, does something count as being in the record if it's just – Yes. Yes, I can cite – I've got a couple of cites I can find in here, but I can also amend that, too, if it's fairly presented, if it's before the state court, and that includes on a petition for review. So can I just ask, if I agree with you that he exhausted in state court, we still have this issue in federal court that – I'm not sure the petition in federal court, at least the operative one, it doesn't attach to this report. I know he did originally, but the operative one doesn't. And so I'm wondering, I guess, two things. First, to proceed in federal court, does he need to amend the second amended petition? Because it actually doesn't really state this claim yet, but he could if he had a chance to amend. And then second, can you win on this without getting an evidentiary hearing ultimately, and can you get an evidentiary hearing in federal court? I do not see why not. I think this claim is exhausted. It meets the standards under AEDPA because I think the claim below in the state court definitely makes a prima facie case. So their denial of any evidentiary development means that under D2, we're around AEDPA, so in the federal court, I think there's plenty of room for an evidentiary hearing. And two things that I wanted to know. I'm sorry, if we were going to find that this was exhausted in state court, we would still have to determine whether the state court could have had any reasonable grounds for rejecting it, right? It's not reasonable grounds on a petition. It's a deferential review, right? Under Harrington. The refusal, the summary denial, the refusal to grant any sort of evidentiary development, the standard on that by the state's own explanation and policy is prima facie case. If you accept all the evidence before the state court as true, is there a prima facie case made? And it's not whether the law isn't under AEDPA. The question is whether the state court, even if we assume this was presented to them, could have plausibly rejected it. That is basically when there's an analysis or when there's sort of evidentiary development. But under Harrington, don't we assume that their reasoning was the best reasoning it could be? But the question still comes to when you analyze that reasoning, whether accepting all the evidence before the state court as true, there was a prima facie case made or not. If the court then summarily denies it. And it's not the way I read Harrington, but in this case, the arguments to the California appellate courts were he didn't do it, right? There was misidentification and he didn't do it. There was also these three claims I just made. I mean, he brought all possible claims, including the mental illness case. I did it because I was insane. Couldn't the court have found that counsel could have reasonably rejected that because that was inconsistent with the claim that he was continually advancing, which was that he didn't do it, that someone else shot the victim? I think the Supreme Court law and the law in this circuit is very strong, that if there are red flags of mental illness, trial counsel is under a strong duty to investigate, especially when there's a crime that includes a specific intent element. If there's any way under Seidel v. Merkel, under Wiggins, under all of these, if you have red flags, you investigate them and you decide whether or not to present them. Here, there is no indication that there was any investigation. It would have been a good trial strategy that was never used, and not because he chose another strategy just because he went with, I'm not presenting anything. I'm just saying. So it's not that he didn't present anything. There was a claim that one of the witnesses was lying, that he was coerced, and that your client didn't do it, right? Oh, I'm talking about trial counsel. But, I mean, there wasn't nothing that was done at trial. I mean, trial counsel argued he didn't do it, and that there were witnesses who were coerced and who lied about your client doing it, right? Right, without presenting any evidence, and in direct contravention of a video showing the crime, as well as the victim's statement, and as well as other physical evidence. So if it was a strategy, it was not one that was, you know, that was constituted sufficient performance. Although even now, even in presentations to the district court, your client was telling the district court he didn't do it. Again, because he's very mentally ill. Can I go back to just how procedurally you would proceed if you got the remand you're asking for? So would you need to amend the petition? And did he request amending the petition? He was asked, basically, he amended himself on the second amended petition. After the first amended petition was denied, he was given basically a choice of other ways of showing exhaustion, and he chose to amend. So probably, I think it would be a good idea, because the first petition he filed did include everything from the state one, the one that I mentioned with Exhibit C and so on, but the court told him you have to cut everything way down. He was instructed. So it seems like the court kind of led him to now have a petition that doesn't really state this claim. Exactly. But now we've got this petition that doesn't really state this claim, and I didn't see a request to amend it. So I'm just not sure we could say the district court was wrong that this petition didn't state the claim. It didn't. But maybe the district court should have given yet another leave to amend, and maybe that's the best we can say at this point. If it would have given leave to amend with counsel, that would have made sense. But basically, they were just kind of going through the same dance steps. File a claim. Have it be rejected as unintelligible. Request help. Have the opposite tact taken that he was able to present his own claims. So instead of continuing that dance, I am asking that this be remanded with an amended petition and perhaps an evidentiary hearing to look into the mental illness and whether trial counsel was ineffective or not investigating and presenting. But you wouldn't be representing him anymore, so you also would need us to say if counsel is required or what would be the counsel situation. Usually we do. If there's counsel at the Ninth Circuit, we go back on remand as well. That's my experience. I'm not certain it's a policy, but it's my experience. I think I'm loyal for time. You are.  Thank you. Let's hear from the State. Good morning, Your Honors. Nathan Gutmann, Deputy Attorney General for Respondent. And may it please the Court, I'll get right to the exhaustion issue because counsel's current exhaustion argument is just based on an incorrect reading of the record. The petition for review that counsel is referring to is a petition for review from the direct appeal. That petition had nothing to do with the claims in the California Court of Appeal petition, so it could not possibly have exhausted any of the documents that were only ever presented to the California Court of Appeal. So let's see. You're asking us, I guess, should we look at S.E.R. 1024? Is that the first page? I believe counsel is citing to just the docket denying the petition for review. The petition for review itself, I don't think, is in the excerpts. It was certainly lodged in the district court. So, okay, your opponent referred us to this document that begins at S.E.R. 1024. What is that that I'm looking at? I have that in front of me. I don't know the numbers off of it. California habeas corpus. I guess this is the second district court of appeal petition. Exactly. Okay. Right, so the documents that were presented to the California Court of Appeal, which are the crucial documents for the new appellate claims, those were never presented to the California Supreme Court. Oh, I see. The petitioner did not file a petition for review from the denial of that California Court of Appeal habeas petition, which might have put those crucial documents before the California Supreme Court so that any claim based on those documents might have been exhausted. That didn't happen. So, I'm sorry. To me, what you're saying was my understanding of the record, but we still have E.R. 131, which I think is the relevant page of the petition to the California Supreme Court, the first habeas petition to the California Supreme Court. And it does talk about something about mental illness. It's not very on point. I mean, it talks about nervous breakdowns, but it says something about mental illness, and it cites this Proffitt v. Waldron case, which is about IAC for not investigating mental health for purposes of an insanity defense. So, for a pro se defendant, why isn't this enough? So, exhaustion requires fairly presenting the operative facts and legal theory. The operative facts for the current appellate claim are the witness reports and the insanity opinion. Those operative facts were never presented to the California Supreme Court, so the claim could have been exhausted. And Proffitt, in and of itself, can't help petitioner. I would point out the current appellate claim is multifaceted. It is that counsel should have presented an insanity defense and or a defense of imperfect self-defense. But I think we could, I mean, we don't have to say that his only claim is the and or. Like, let's just take the first part, that he should have had an insanity defense. He cites a case that's about that, and it's about failure to investigate. So, if he's saying my counsel didn't even investigate this, I mean, that report that says basically he was insane was a different counsel, right? And there was a mistrial, so the counsel he had may not have even known about that report. That's the investigation point. According to the petitioner himself, he asked in his annotations on that report, when he submitted it to the district court, he asked his counsel about this psychologist, and the psychologist said he's nuts. So, from all appearances, it seems that this was in trial counsel's possession. That's Mr. Karsten or something. Sorry, can you explain what you were just saying about that? Petitioner, when he submitted a copy of the insanity opinion to the district court, on I think the very last page, said, I asked my trial counsel, what do you think about this psych, meaning psychologist. He said he's nuts. So, they talked about this opinion. And his second trial counsel, the counsel that was actually in this trial case, Mr. Kasten. That's right. But assuming that Profitt exhausted an argument about failure to present an insanity defense, that reading of the use of that sort of citation would actually harm petitioner's claim that he presented this argument in district court. In the relevant district court claim, claim five, he cited a different case, Williamson, which was about the failure to obtain mental health records that could have been used for the purpose of competence. So, if we're reading all that into a citation in that role in a claim, it's lose-lose for petitioner. So, counsel, if we get back to ER 131, which Judge Friedland talked about, what is the state's, if we were to determine that this did exhaust, what's the state's herrington argument? Look, to the extent that the current insanity claim was presented to the California Supreme Court, there's no information why counsel would or wouldn't have gone with that insanity defense. So, in the complete absence of evidence that that, the claim is still conclusive, petitioner wouldn't have satisfied his burden to show deficient performance of prejudice. And based on the record before us, there are actually very good reasons. I would like to talk briefly about the course that was taken at trial. In the course that wasn't taken, the insanity option, at trial, counsel didn't present some sort of suicidal misidentification defense. He argued the finer point that petitioner has stated again and again, which is that he was present but not the shooter because the video doesn't show specifically the shots being fired, and there were multiple people in the video. And the victim shouldn't be believed for the reasons that the court mentioned. So, counsel was presenting the defense that, based on everything we know from petitioner's own filings, he wanted counsel to present actually a stronger version of that defense. The insanity, potential insanity defense, there are very good reasons why counsel wouldn't have presented that. First of all, there's no indication petitioner ever would have agreed to admit factual guilt or that he was insane. And beyond that, this was a bad insanity opinion. This psychologist didn't claim to know anything about what petitioner's understanding of this shooting was. The petitioner didn't tell him about it. The psychologist didn't say he had any way of working back to know what petitioner's psychological symptoms would have been at the time of the shooting. Instead, it was based on sort of circular reasoning that petitioner had to prior unexplained shootings, and this charged shooting was also unexplained, so he must have been crazy for all of them. So, not only would that have put very harmful information before the jury, but also just the reasoning isn't good. And some of what you just said, as I understand it, is that ER 257, which is the petitioner, it exhibits a telling the district court why the psychiatrist was wrong. Right. This wasn't a good opinion for the defense to use, so petitioner certainly hasn't satisfied his burden to show that there was no reasonable basis for counsel to have taken the course that he did take or the additional showing under 2254. What about the alternative theory that let's say not that straight insanity defense that would have resulted in a guilty finding, but rather just that he wouldn't have been able to form the specific intent necessary to be convicted because he was operating under some sort of delusion, but it was perceived what the victim, Mr. Johnston, that's not his name, was doing and reacted in a rash and unreasonable manner, but it was attributable to his mental illness. So, I think the response would still be the same. Petitioner hasn't made any sort of showing that he would have argued or accepted that he actually was the tutor. Everything we know is that he was arguing successfully, arguing the exact opposite. If I could, and I know the- Just go ahead and follow up on that. Your opponent's argument is that forget about whatever strategy trial counsel ended up pursuing. If a lawyer did not do an adequate investigation to figure out whether this might have been a more viable option, that could still be an effective assistance regardless of what ended up unfolding at the trial itself. Right, and there's no allegation ever that counsel failed to obtain this information. The allegation that was actually made is that counsel failed to obtain records from the 80s. We're dealing with just completely different claims, and any remand would just improperly evade the second of success requirements. If you are making a brand-new claim, there's a procedure for that, and that's the SOS application. That's not the route that's being argued on appeal, and so that leads to the problems that we're seeing where counsel is saying that documents that were presented only to the California Court of Appeal were presented to the California Supreme Court, and that petitioner actually wanted to admit guilt and say he was insane when, in fact, all he ever did was insist that he was an office shooter. Counsel should have presented a stronger misidentification defense. He wanted to say he was insane. It was that he never was told that this was a possible option. No one investigated it. If they had investigated it and told him insanity defense was an option, he might have made a different choice. Those are just brand-new allegations that have never been made anywhere. The allegations that have been made, they weren't general. They were specific, and they were about mental health records from the 80s. They were not about a 2013 psychological evaluation. The petitioner specified what he was talking about in his actual claims, and when the issue of the insanity opinion came up, he said he disagreed with it. Okay. Thanks, Your Honor. All right. Thank you very much. Let's put two minutes on the clock for our final panel. Thank you, Your Honors. A couple of things. First of all, I do concede that the PFR was on the appeal. I've read something about that. But in the first petition filed directly in the California Supreme Court in the supplement, the claim says, Records of prior first-time hospitalized mental institution not obtained by attorney Mr. Kastner, trial counsel. Records would have shown I had two nervous breakdowns at L.A. County Psych Hospital. Please see superior court filing by trial counsel. And those nervous breakdowns, at least one of them, constituted nine months of being involuntarily kept in a psych institution. So that is a claim of failure to obtain mental illness evidence. And with regard to Exhibit C, first of all, yeah, this is less about insanity, because insanity would have been a much harder defense at trial. But mental illness undercutting specific intent to commit attempted murder, that is highly supported by Exhibit C, Dr. Hirsch's report, which you can read yourself. Can you respond to your opponent's point? I'm just looking at the ER-131. The suggestion was made that the Exhibit C that we were looking at before the Dr. Hirsch report was simply never provided as a factual basis for the claim to the California Supreme Court. Is that correct? It was later, but it was in a petition that had procedural bars. That was the one that was rejected as successive, or that was one of the ones that was rejected as successive? Under Clark, I think, yes. So I guess then the question for me is, all right, so I'm looking at ER-131, and I think that's what you were reading from just a second ago, but there's no facts to support it. So how could the California Supreme Court have been unreasonable and say, no, this is not, you haven't made out a prime slasher case? If he does say for factual basis, please see superior court filing by trial counsel, and there are two possibilities for what that could be. Number one would be where his initial counsel, the public defender, filed a motion to dismiss Claim 4, the attempted murder claim, on the basis of lack of a showing of specific intent. But it could also be the court-ordered report. But that was never filed, right? I mean, maybe he used the wrong words, but I don't think that report was filed by trial counsel. The report itself? I don't think so. Yeah, I don't know. It could be right that it wasn't, but then that would be ineffective as successive counsel. I'm trying to figure out what he means by see superior court filing by trial counsel. It would be better for him if it was the doctor report, but I think it's probably not. What you said about the lack of a thread. It could be, but I feel that this is still sufficient here to constitute exhaustion, in that he talks about failure to obtain mental health evidence, and he points to where in the record the argument was made against specific intent that would have provided a good defense here. Are there other points you came up to make? I was stumbling a lot. Yeah, for example, Dr. Hirsch talked about the crime and how he didn't have the specific intent quite in a focused way. He talked about this being a non-logical choice based on his severe paranoia and his understanding of what others would see as non-threatening as very much a direct threat. So there is a lot in that report that trial counsel had and decided not to use. The doctor's report. I mean, it sounds like your opposing counsel is saying this doctor's report is no good anyway. Do you have a response to that? I don't understand. I do think it is a very good, thorough report based on police records, jail records, long-standing hospitalization records, many interviews. It seems that trial counsel's failure to do anything where the crime charge had a specific intent constitutes deficient performance. Okay. All right. Thank you very much for your argument. The case just argued is submitted.
judges: WATFORD, FRIEDLAND, BENNETT